Hinton *vs.* Lindsay.

**No. 144.**—JESSE H. HINTON, plaintiff in error, *vs.* JOHN T. LINDSAY, defendant in error.

[1.] For a single person to board and lodge four nights in the week in a particular district for the purpose of teaching school, will fix his residence there, under the Act of 1838, notwithstanding he may spend two nights of the seven at the house of his father, in another district.

[2.] Whenever a Justice of the Peace removes from the district for which he has been elected and commissioned, he vacates his office.

[3.] The Acts of an officer *de facto*, whether judicial or ministerial, are valid, so far as the rights of the public or third persons having an interest in such acts are concerned; and neither the title of such an officer nor the validity of his acts as such, can be collaterally impeached in a proceeding to which he is not a party.

[4.] An officer *de facto* is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law; one who acts by color of an appointment, but is not in all respects legally qualified.

[5.] A Justice of the Peace who, notwithstanding his removal to an adjoining district, continues to act under his former commission, is an officer *de facto*, and his acts as such are not void, so far as the public and third persons are concerned; neither can they be invalidated in a proceeding to which he is not a party.

Motion, in Wilkes Superior Court. Decision by Judge James Thomas, September Term, 1856.

This was a controversy between judgments on a money rule. The *fi. fas.* in favor of Hinton were upon judgments rendered by one Bradford, as a J. P. at a time when he was engaged in teaching school in a district adjoining that in which he claimed to be Justice. Four nights of each week were spent in the district where he taught school, and two at his father's house, in the other district, where he had previously resided; and the seventh nights, sometimes at one place and sometimes the other; he was a single man, and his intention was, when he took the school, to return to his father's at the expiration of six months.

The Court below held the judgments void, and that they might be attacked on this rule. This decision is assigned as error.

BARNETT, for plaintiff.

REESE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Did the Justice, Bradford, reside out of the district at the time he rendered the judgment in favor of Jesse H. Hinton?

We concur with Judge THOMAS, that this question is to be determined, not by the Common Law, but by the Act of 1838. That Statute was passed for the express purpose of "fully" defining what should constitute the legal residence of citizens and inhabitants of this State. The preamble recites, that "*whereas*, no small degree of embarrassment has arisen and is likely to arise from the indefinite manner in which the place of residence of citizens and inhabitants of this State is defined by law; for remedy whereof, it was enacted, "That from and after the passage of said Act, the place where the family of any person shall permanently reside in this State, and the place where any person having no family shall *generally* lodge, shall be held and considered as the most notorious place of abode of such person or persons respectively." (*Cobb*, 530.)

What is the proof upon this point? Mr. Justice *Bradford* was a single man. Up to the time of his election, he had always lived with his father. Subsequently, he took a school in the adjoining district and slept four nights out of seven at the house where he boarded and taught; two he spent at his father's, and the other he divided between the two places. Under the Statute, it cannot be denied, that he "*generally* lodged" out of the district for which he was elected.

[2.] Did he thereby vacate his office? After carefully collating all of the Acts upon this subject, we agree with the presiding Judge that he did.

Justices of the Peace are to be elected by the voters of the

district in which he resides; and when a vacancy shall happen by death, resignation or otherwise, (removal for instance,) provision is made for choosing a successor. (*Cobb*, 207.) And by the Act of 1809 (*Cobb*, 638) it is provided, that "in all cases where any Justice of the Peace shall resign or *remove out of the limits of the district for which he shall have been appointed, it shall be the duty of such Justice to deliver his docket or book of entries, or a fair copy thereof, to his successor in office within sixty days after he may be commissioned, or deposit the same with the Clerk of the Inferior Court.*"

The implication is irresistible, that removal from the district works a forfeiture of the office.

[3.] The last, and by far the most troublesome point is, were the judicial acts done by this Magistrate during the five months that he generally lodged out of the district in which he presided, void? And can they be collaterally impeached and set aside, in a proceeding to which he is no party?

We consider the doctrine well settled, upon great principles of public policy, that the acts of an officer *de facto*, whether judicial or ministerial, are valid, so far as the rights of the public or third persons having an interest in such acts are concerned; and that neither the title of such an officer nor the validity of his acts, as such, can be indirectly called in question in a proceeding to which he is not a party. This doctrine has been established from the earliest period, and repeatedly confirmed by an unbroken current of decisions, both in England and in this country. (*The Abbot of Fontanne, Year Book 9, Henry 6, 33; Leach vs. Hewel, Cro. Eliz. 533; Harris vs. Jays, Cro. Eliz. 699; Knight vs. The Corporation of Wells, Lutwytche, 508; King vs. Lisle, Andrews, 163, S. C.; 2 Str. 1090; The King vs. The Corporation of Bedford Level, 6 East. 366; The Margate Pier vs. Hannam, 5 Engl. C. L. R. 278.*)

Indeed, the doctrine in these cases is universally applied in England to officers *de facto*, from the lowest officer up to

the King. (1 *Bla. Com.* 204, 371; 1 *Hale's P. C.* 60; *Foster*, 397, 398; *Hawk. P. C. b.* 1, *ch.* 8, *sec.* 1, 3.)

The same doctrine has been repeatedly recognized and affirmed by the Courts of the Union. (*The People vs. Collins*, 7 *Johns. R.* 549; *Tucker vs. Aiken*, 7 *N. Hamp. R.* 113; *Mason vs. Dillingham*, 15 *Mass. R.* 170; *Buckram vs. Ruggles*, 15 *Mass. R.* 180; *Fowler vs. Beebe et al.* 9 *Mass. R.* 231; *Moore vs. Graves*, 3 *N. H. Rep.* 408; *Moore vs. Calley*, 5 *N. H. Rep.* 222; *Baird vs. Bank of Washington*, 11 *S. & R.* 411; *Cock vs. Halsee*, 16 *Peter's*, 95; *McKinstry vs. Tanner*, 9 *Johns. R.* 125; *Wilcox vs. Smith*, 5 *Wend.* 231; *The People vs. Bartlett*, 6 *Wend.* 422; *The People vs. Covert*, 1 *Hill*, 674; *Trustees of Vernon Society vs. Hills*, 6 *Cowen*, 23; *The People vs. The Corporation of New York*, 3 *Johns. Cas.* 19; *McKinn et al. vs. Somers*, 1 *Penn.* 297; *The People vs. Hopson*, 1 *Denio*, 574.)

[4.] But conceding the foregoing rule to be well established, it is not always easy to determine what ought to be considered as constituting a colorable right to an office, so as to determine whether one is a mere usurper. An officer *de facto* is said to be one who exercises the duties of an office under color of an appointment or election to that office. An officer *de jure* is one who, in all respects, is legally appointed and qualified to exercise the office. A mere *usurper* is one who undertakes to act as an officer without any color of right.

Lord *Ellenborough*, in the leading case of *The King vs. The Corporation of Bedford Level*, defines an officer *de facto* to be one "who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." (Citing 1 *Ld. Ray.* 660.)

[5.] Now the only point which presses at all upon our minds is, assuming that the office was vacated by the removal of the Justice, is he to be considered as a Justice *de facto*, or a *usurper* merely? That he still had the reputation of being the officer he assumed to be, in the language of Lord *Ellenborough*, there can be no doubt. His judgments and official acts were submitted to by the defendant in execution and

others, without objection or contestation. It is evident, that neither the Magistrate himself nor others believed his commission was forfeited by his removal, under the circumstances. The question has been considered so doubtful as to require the final adjudication of this Court.

In view of all the facts of this case, the necessity of protecting the rights of individuals and the security of public peace, maintaining the supremacy of the law and enforcing its due execution, we feel constrained to uphold the judgments of this officer. It is not-pretended that there is any flaw or defect in his appointment; that he was not duly elected and qualified. There has been no chasm or *hiatus* in the regular discharge of his public duties under his commission. No attempt has been made to oust him on a *quo warranto*. His title to the office has never been directly drawn in question in a proceeding to which he was a party, and in which the evidence might be very different. The act done is one which he might perform as an officer *de facto*.

*Abbott, C. J.* in *Margate Pier Co. vs. Hannam*, says, " If the act of a Justice issuing a warrant be invalid on the ground of the objection there made, all persons who should act in the execution of the warrant would act without any authority. A Constable who arrests, and a Jailor who receives a felon, would each be a trespasser; and a Constable and a person aiding him might, in some possible instance, become amenable even to a charge of murder, for acting under an authority which they reasonably considered themselves bound to obey, and of the invalidity whereof they were wholly ignorant."

And in view of these consequences, the Court there held that the acts of a Justice of the Peace were not void, although he had not taken the oaths nor delivered in the certificates required by law. By an Act of 51*st of George 1V. c.* 36, it was provided, that no person should act as a Justice of the Peace, unless he shall have taken and subscribed the oaths, and delivered in, at some general sessions to be holden in some of the *cinque* ports, the certificate respectively required to be taken and subscribed and delivered in by the Magis-

Hinton *vs.* Lindsay.

trate. And by an older Statute, (18 *Geo.* 2 *c.* 20,) it is declared, that any person who shall act as a Justice without being qualified as required by law, shall forfeit £100.

In the case before us, we are called on, not only to invalidate the title of the officer, but to decide, that he acted as a mere usurper, and that his acts are wholly void, both as to individuals and the public.

In *Knowles vs. Luce,* (*Moore,* 112,) a distinction was taken by the Court between copyholds granted by a steward of a manor who had color, but no right to hold a Court, and those granted by one who had neither color nor right, and who was, therefore, a mere usurper. The former were deemed valid—the latter, void. And the reason given for the distinction is, that in the former case, "those for whom such acts are done, know not the extent of the steward's title." And *Manwood,* C. B. who delivered the judgment of the Court, compares it to the case of an under-steward when the head steward is dead whom he considers to have color of authority; so that if he assemble the tenants and they do their service at the Court, the acts which he does there are good.

Lord *Ellenborough,* in commenting on this case, in 6 *East.* already referred to, says: "This doctrine of *Manwood* seems no more than what was the law in the case of all judicial officers, when the interest of the officers determined on the demise of the Crown; for though in consideration of law the commissions of the Judges, &c. immediately determined on such demise, yet, their intermediate acts, between the demise of the Crown and notice of it, were good. (Citing 2 *Hale's P. C.* 24; *Cro. Chas.* 97, *Sir Randolph Crew's case.*)

Upon the whole, in prospect of the great public mischief which the objection, if sustained, would spread throughout the land, and no notice having been given of the alleged vacancy, and no opportunity to the officer to defend his title, we feel warranted in holding that the acts of the Justice cannot be set aside in this collateral way.