JAMES S. POOL, plaintiff in error, *vs.* S. S. PERDUE, trustee, defendant in error.

1. A commissioned Notary Public, as *ex officio* Justice of the Peace under the Constitution of 1868, may issue an attachment as any Justice of the Peace may under the provisions of the Code.
2. One holding a commission from the Governor as Notary Public and *ex officio* Justice of the Peace, and acting as such, is a *de facto* officer, and his official acts cannot be attacked collaterally by the parties to a suit, on the ground that his appointment was not authorized by law.
3. Objections to the form of the affidavit in an attachment are waived by the appearance of the defendant, and pleading to the merits.
4. A written notice to the defendant, that an attachment is pending against him, stating the Court to which it is returnable, and the time, and stating on what property it has been levied, is a sufficient compliance with section 3233 of the Code to authorize proceedings as in an ordinary suit, especially if the defendant appear and plead to the merits.
5. When objections were filed to certain interrogatories, as leading, and the Judge certifies that, upon his announcement that if the objections were sustained he would continue the case, the party making the objections ceased to urge them, this Court will not, for that reason, grant a new trial.
6. In this State, one partner may sue another at law, and if he is able to show the affairs of the concern so settled, as the jury can ascertain what is justly due him, he may recover.
7. Upon the whole case, we think there was no error in the judgment refusing a new trial.

Notary Public. *De facto* officers. Attachments. Waiver. Interrogatories. Partnership. New Trial. Before Judge GIBSON. Richmond Superior Court. June Term, 1870.

On the 28th of October, 1869, Perdue made affidavit before one Reynolds, of Augusta, as a Notary Public and *ex officio* Justice of the Peace, that Pool resided out of this State, and was indebted to him, as trustee of his wife, $2,000 00, *to the best of his knowledge and belief.* He gave the usual attachment bond with one security. Said Notary approved it, and issued an attachment against Pool. On the 1st of November, 1869, this attachment was levied upon Pool's

property. On that day Pool filed a bill averring said facts, that said attachment was void because the affidavit was not positive as to the indebtedness, that he owed Perdue nothing, that said security was worth nothing over and above the exemptions allowed by law, and prayed for an injunction against said proceeding, because the property would suffer by detention by the sheriff. The Chancellor ordered injunction to issue, unless, upon notice, said bond be made to conform to law, and good security be given.

On the 12th November, 1869, after notice of said injunction, served on the 3d, said bond was amended by striking out the italicized words, having the first security to justify, and giving two additional securities.

On the 31st of December, 1869, Perdue filed his declaration averring that he succeeded a former trustee of his wife, that a partnership in farming existed between Pool and such former trustee as such, that all the firm debts were paid, but that Pool still owed the trust estate on account of said partnership, $2,840 65. The bill of particulars charged Pool with the prices of the produce sold by him, etc., credited him by service, etc., and charged him said $2,840 65, as one-half of the net balance due on the settlement of the business.

On the 26th of February, 1870, Perdue's counsel served Pool with notice that said notary had issued said attachment, returnable to the January Term, 1870, of Richmond Superior Court, stated upon what property it had been levied, and that it was still pending.

In March, 1870, Pool pleaded the general issue, that he never was a partner with Mrs. Perdue's trustee, but that he was partner in farming with the former trustee and with Perdue in their individual capacities, and that Perdue owed him in the sum of $880 54 by reason of his failure to perform his duty as a partner in said farming operations. To this plea was attached a bill of particulars from which he deduced that balance.

In June, 1870, the cause came on for trial. Pool's coun-

sel moved to dismiss said attachment upon the following grounds: 1st. A Notary Public and *ex officio* Justice of the Peace has no authority to issue an attachment. 2d. Reynolds was not a legal Notary Public, because Augusta contains but four militia districts, and in each there was a Notary Public and *ex officio* Justice of the Peace, in commission, when Reynolds was commissioned, and by the Constitution there can be but one in a district. 3d. Because, after the injunction was ordered, no new affidavit or new bond and levy were made, but the old papers stood, only altered as aforesaid. 4th. Because the declaration shows that the claim is for an unliquidated balance claimed by plaintiff from defendant as his partner, etc. The Court overruled the motion and the trial proceeded.

Plaintiff had sued out interrogatories for Blodgett, the former trustee. When Pool's counsel went to cross them they wrote upon them that they reserved "any and all objections to the form of these interrogatories and to the many leading questions therein contained." These interrogatories had been answered and in office some time before the trial. When plaintiff's counsel offered them in evidence, Pool's counsel objected to them because they were leading, and because some of the cross-interrogatories were not answered. The Court overruled the objection and the evidence was read to the jury.

There was evidence *pro* and *con* upon the issues made by said pleas, and the jury found for the plaintiff for $2,840 68, with interest and costs. A new trial was moved for upon the ground that the Court erred in refusing to dismiss said attachment; in not rejecting said interrogatories; in holding that one partner might recover against another, at law, because the verdict; for more than the attachment claimed, was contrary to the evidence, etc., etc. The Court refused a new trial, and error is assigned on each of said grounds.

Pool *vs.* Perdue.

A. D. PIQUET; A. R. WRIGHT, for plaintiff in error. As to appointment of Notaries Public: Par. 4, sec. 6, Art. V., Const. of 1868. The affidavit was defective: R. Code secs. 3200, 3233. The interrogatories should have been rejected: R. Code, sec. 3835, repealing sec. 4, of Act of 1854.

H. CLAY FOSTER; J. C. C. BLACK, for defendant. The Notary was *ex officio* a Justice of the Peace, by said paragraph of the Constitution, and therefore could issue attachment: R. Code, sec. 3199. Reynolds was, at least a *de facto* Justice: 20 Ga. R., 746, R. Code, sec. 120. The objections to the attachment were too late: R. Code, sec. 3233. So as to those to the interrogatories: 29 Ga. R., 443, 31st 625, as modified by sec. 3835 of the Code; 8 Ga. R., 425. As to new trial: 1 Ga. R., 580; 10th, 429; 14th, 154; 39th, 119; 2d, 100; R. Code, secs. 3529, 3532; 31 Ga. R., 140.

McCAY, Judge.

1. As we understand the Constitution of 1868, a commissioned Notary Public is a Justice of the Peace for the district for which he is appointed, with all the powers and functions of such an officer. Provision for their appointment is made in that section of Article 5 of the Constitution which is directed to "Justices of the Peace." And by section first of that article, they are classed among the constitutional judicial officers. It is well known as part of the history of the times, that such was the intent of the framers of the Constitution, and that the language was designed simply to make one of the Justices in each district chosen by the people and the other appointed by the Governor.

2. There is no dispute but that the acts of an officer *de facto* cannot be attacked collaterally. The public interest in favor of this rule is too obvious to need elaboration. See *Hinton vs. Lindsay*, 20 Georgia Reports, 746; Code, section 120. The only question about which doubts have arisen is, when is one a *de facto* officer? Clearly, however, one hold-

ing the commission of the Governor, to an office which the Governor is, by the Constitution, authorized to fill, must be, at least, a *de facto* officer: Code, section 120. We are of opinion that there can be but one legal commissioned Notary in a district at one time, but the proper mode to settle this is by a proceeding for the purpose, and not, as is attempted here, by collaterally attacking his acts.

3. Section 3236 of the Code provides that the affidavit may be traversed at the *first term,* and it has been the uniform practice to consider this right as waived if not done then. Section 15, New Rules of Court. Here it appears that the defendant had appeared and pleaded to the merits before his objections to the attachment were made. We think he was too late to do this. After a plea to the merits a defendant can make no objection to the mode by which he has been brought into Court. Code, section 3259.

4. The notice given in this case covers, almost, in terms, the requirements of the statute: Code, section 3232. Notice is required of the "pendency of the attachment, and of the proceedings therein." The only proceeding then had here was the levy. The notice given specifies the parties, the Court, the term, and the property levied on. We think that a sufficient notice. With that, the defendant was informed of everything but that which a copy of the declaration would give him. That is not required, and he can see that, upon inquiry.

5. The objection to the answers of the witness—that is, to his failure to answer the cross-questions—was an objection to the execution, and came too late: Code, 3835; 8 *Georgia Reports,* 425. The other objection made was, that the questions were leading, and this objection was made and filed with the crosses, at the time the defendant crossed the interrogatories. We are inclined to think the Act of 1854 is inconsistent with section 3835 of the Code, but we do not so decide. The bill of exceptions does not present this point clearly for our decision. The Judge certifies that he under-

Pool *vs.* Perdue.

stood this objection to be waived on his announcement that if he sustained it he would continue the case. And this Court would be very reluctant to grant a new trial, on such a statement. It does not affirmatively appear that the Judge overruled the objections, and we do not think such a loose statement would justify us to call what transpired a *judgment* of the Court, subject to reversion here. At best, the point made is upon a matter which is by no means material, and it would be rather trifling with justice, and with the public interests, to have this whole case gone over, because a leading question was put in the interrogatories.

6. Our law is very broad as to the right to sue at law: Code, section 3027. If the proper allegations are made, and the proof shows that a money verdict can settle the rights in dispute, the plaintiff may go on at law, even against his partner. Nor are we prepared, at present, to limit the jurisdiction at law to a money verdict for the plaintiff, or a verdict for the defendant. The statute expressly allows the verdict to be moulded and framed so as to give equitable relief in the case, as verdicts and decrees are rendered and framed in equity proceedings. How far this may fairly go, we are not prepared to say, until a case arises requiring a determination of it.

7. We see nothing in the verdict to call for our interference with the judgment of the Court. The evidence is conflicting, and it was clearly the province of the jury to settle the conflict.

Judgment affirmed.