## 53897. BECK v. STATE OF GEORGIA.
## 53898. HYMAN v. STATE OF GEORGIA.

McMurray, Judge.

This case involves the authority of one of the associate judges of the State Court of Dougherty County who acted as magistrate in the issuance of a search warrant. Certain gambling paraphernalia and other assets were seized in its execution. The defendants brought an action in the State Court of Dougherty County

seeking the return of property seized from them during a search conducted pursuant to a warrant issued by John Tracy, acting as Judge of the State Court of Dougherty County.

The contention of the defendants, Beck and Hyman, is that John Tracy, an Albany lawyer, who acted as associate judge in the State Court of Dougherty County, had not been properly appointed to that position and therefore his acts in that capacity were void. The state court dismissed the action stating therein it was the court's opinion it was an impermissible collateral attack on Tracy, who was not named as a defendant in the action. The defendants appeal. *Held:*

The City Court of Albany was created in 1897. See Ga. L. 1897, p. 408. It was thereafter amended from time to time until 1964, when the activities of the entire court were redefined (Ga. L. 1964, p. 3053). At that time the office of judge pro hac vice was created in which a practicing attorney could be appointed by taking the same oath as the judge of the City Court of Albany. In 1965, and again in 1969 (Ga. L. 1965, pp. 2505, 2507; 1969, pp. 2923, 2924), this Act was amended with reference to judges pro hac vice. Thereafter, by amendment, the name of the City Court of Albany was changed to the State Court of Dougherty County (Ga. L. 1974, p. 3777). Then, in order to create additional duties for the judges pro hac vice, among other things, the Act was amended to change the name of said appointed practicing attorneys (no number set out) to that of associate judges to act fully in the capacity as the judge of said court (see Ga. L. 1976, pp. 3176, 3180). The alleged associate judge who executed the warrant had taken the oath of office as a judge pro hac vice and was serving at the time of the latest amendment. The sole issue on appeal is whether or not he was an associate judge of said court even though he did not again take the exact same oath of office after the amendment of 1976.

1. The mere amendment changing the title of the appointed practicing attorneys who had taken the oath of office as judges pro hac vice to that of "associate judges of the State Court of Dougherty County" did not require that they take another oath of the judge of the said court since they already had been appointed and had taken the oath

of said office. Since the court properly dismissed the complaint it is unnecessary for us to consider the language in the final order with reference to same being a mere collateral attack on the trial judge who was not named therein. See *Hill v. Willis,* 224 Ga. 263, 267 (161 SE2d 281); *Sims T. V., Inc. v. Fireman's Fund Ins. Co.,* 108 Ga. App. 41, 43 (131 SE2d 790); *Hood Oil Co. v. Moss,* 134 Ga. App. 477 (6) (214 SE2d 726).

2. However, the state also contends that even if the practicing attorney Tracy acted as associate judge de facto, the same was a completed judicial act. The search warrant was complete when issued. The return of the warrant after execution was a mere ministerial act requiring no exercise of judicial discretion. *Williams v. State,* 125 Ga. App. 170, 172 (3) (186 SE2d 756); *Lewis v. State,* 126 Ga. App. 123, 125 (2a) (190 SE2d 123). The provisions of Code Ann. § 27-310 (Ga. L. 1966, pp. 567, 570) as to such return does not require it to be made solely before Judge Tracy or before any sworn judicial officer of the State Court of Dougherty County, as the return could also be made "before any court of competent jurisdiction."

Therefore, conceding he was a de facto officer, the exercise of judicial discretion (as to the judicial acts) was complete with Judge Tracy's issuance of the search warrant and therefore the general rule protecting the actions of judicial officers de facto should be applied here. The public interest in protecting the certainty of judicial decrees and judgments has attached. See *Hinton v. Lindsay,* 20 Ga. 746; *Stone v. Wetmore,* 42 Ga. 601; *Tarpley v. Carr,* 204 Ga. 721 (51 SE2d 638).

*Judgment affirmed. Deen, P. J., Quillian, P. J., Webb and Banke, JJ., concur. Bell, C. J., Smith, Shulman and Birdsong, JJ., dissent.*

ARGUED MAY 2, 1977 — DECIDED DECEMBER 5, 1977 —
REHEARING DENIED DECEMBER 16, 1977 —

*Malone & Percilla, Thomas Wm. Malone, III,* for appellants.

*William S. Lee, District Attorney,* for appellee.

SMITH, Judge, dissenting.

I would reverse.

Chief Justice Bleckley, in a commencement address, had the following to say: "Courts cannot do justice of substance except through and by justice of procedure. They must not reach the justice of substance by violating justice of procedure. They must realize both if they can; but if either has to fail, it must be justice of substance . . . As well might a man put out his eyes in order to see better, as for a court to stray from justice of procedure in order to administer justice of substance." To my mind, the majority has done just this, ignoring the procedural realities in order to reach what it feels is a just result.

A. History of The State Court of Dougherty County.

1. The City Court of Albany was created in 1897. Ga. L. 1897, p. 408.

2. In 1964, by an amendment the activities of the entire court were redefined. Ga. L. 1964, p. 3053. This amendment created the office of judge pro hac vice. It provided that the office was to be filled by the judge appointing a practicing attorney, whose oath was the same as the judge of the City Court of Albany.

3. In 1965 (Ga. L. 1965, pp. 2505, 2507), and again in 1969 (Ga. L. 1969, pp. 2923, 2924), this Act was amended with reference to judges pro hac vice.

4. In 1974, the name of the court was changed to State Court of Dougherty County (Ga. L. 1974, p. 2777).

5. In 1976, the 1964 Act was amended by striking in its entirety section 11 which provided for judge pro hac vice, and by substituting in lieu thereof a new section 11. Ga. L. 1976, pp. 3176, 3180, approved March 24, 1976. This new section 11 provided for the appointment of practicing attorneys as associate judges. It also provided that "when the *appointments* of such attorneys as associate judges, *together with their oaths* . . . have been *recorded* in the office of the judge of the probate court of said county, *such associate judges may exercise* all the powers of the Judge of the State Court of Dougherty County." (Emphasis supplied.)

6. Under section 11 of the 1964 Act, the judge pro hac vice was restricted "to discharge the duties of his office

temporarily when the judge of said court is unable or disqualified to discharge the duties of his office." Under section 11 as amended in 1976, the associate judge has much broader powers.

7. John L. Tracy was appointed judge pro hac vice of the State Court of Dougherty County and took the oath of office in 1974.

8. The 1974 amendment, among other things, conferred misdemeanor jurisdiction upon the court. As a result, the case load increased to a point that the judge needed help. In order to get relief the judge needed someone to preside over a trial court. It was determined by the state court judge that a judge pro hac vice could not do many things in the court, such as presiding over the trial of cases, unless all parties waived any objections they had to the judge pro hac vice presiding.

9. As a result of the inability of a judge pro hac vice to preside and do anything the judge could do, both Tracy and the judge of the court requested and got one of the legislators of Dougherty County to introduce and get passed the amendment of 1976 that struck section 11 dealing with a judge pro hac vice and enacted in lieu thereof the one creating the office of associate judge. Tracy and the judge of the court were aware of the new section 11. Despite this, Tracy was *never appointed nor sworn in as an associate judge* and consequently no record of such was filed in the office of probate court, all as required by law. The new section 11 became the law March 24, 1976.

B. Events after March 24, 1976.

1. On January 8, 1977, several search warrants were issued by Tracy purportedly authorizing searches of vehicles, premises and persons of Beck and Hyman. Ga. L. 1966, pp. 567, 569 (Code Ann. § 27-304) provides that "all warrants shall . . . be the warrants of the judicial officer issuing the same and not the warrants of the court in which he is then sitting and such warrants need not bear the seal of the court or clerk thereof. The *complaint* on which the warrant is issued *need not be filed* with the clerk of the court nor with the court if there is no clerk *until the warrant has been executed* or has been returned 'not executed.'" Ga. L. 1966, pp. 567, 569 (Code Ann. § 27-306) provides that "the warrant shall be executed within 10

days from the time of issuance." Ga. L. 1966, pp. 567, 570 (Code Ann. § 27-310) provides among other things, that "a written return of all instruments, articles or things seized shall be made without unnecessary delay before the judicial officer named in the warrant or before any court of competent jurisdiction."

The clear meaning of these sections is that the execution of the warrant is not completed, and further judicial action may not be pursued by the state, until the warrant has been executed and returned "before the judicial officer named in the warrant or before any court of competent jurisdiction."

2. On January 18, 1977, the state court judge duly appointed Tracy as associate judge of the State Court of Dougherty County, administered the oath of office, and filed the appointment and oath in the office of the probate court as required by section 11 of the 1976 Act, supra.

3. Immediately after Tracy was sworn into the office of associate judge, Beck and Hyman, through their attorney, filed an application for return of their property seized by virtue of the warrants issued by Tracy on January 8, 1977. The application charged that Tracy had no authority to issue the warrants because he has not been appointed and sworn in as associate judge. It also charged that Major P. W. Posey had the property and no return had been made to any judge or court.

4. After Beck and Hyman filed their application with Tracy, Posey made his return and property inventory of the warrants to Tracy. After the return, Tracy returned the warrants, inventory and property back to Posey who still had possession at the time of the hearing.

5. The return of property application by Beck and Hyman was duly filed with the clerk, and Posey acknowledged service of a copy.

6. Tracy disqualified, and a hearing came on before Associate Judge Jones on January 27, 1977. After hearing evidence the application for return of property by Beck and Hyman was denied. The basis of the denial was: "It is the opinion of the Court that as John L. Tracy was not named as the Defendant in this matter, this motion constitutes a collateral attack on his action and this Court

does not have jurisdiction to consider same."

I do not agree and would reverse.

### C. Contentions of Parties.

1. Beck and Hyman contend that no return had been made to the issuing judge or any court, therefore the proper action was against the state, whose agent was holding the property, and the proper forum was the court to which the property would be returned.

As stated in part B(1), supra, the clear meaning of the sections of the Code set out therein is that no prosecution could be brought as a result of the warrant unless the warrant is executed within ten days of issue and returned to the issuing judge or some court of competent jurisdiction. This had not been done by Posey when Beck and Hyman filed their action, hence no case was pending. Therefore, with an individual holding their property and no case in court, the proper remedy was an action to recover their property from the man holding it at the time of its filing. Posey cannot invalidate their action by filing a return in court after their action has been filed. The action states that Posey is holding the property by virtue of an invalid warrant. It is Posey's responsibility to show he has possession of the property legally. Tracy is not charged with unauthorized possession of the property; Posey is. The fact that Posey must use Tracy to prove whether or not the warrant is legal does not alter the fact that Posey had possession of the property, either by a legal or illegal search warrant, and the burden was upon him to prove the validity thereof.

The two cases cited by the majority, *Williams v. State,* 125 Ga. App. 170, 173 (3) (186 SE2d 756) (1971) and *Lewis v. State,* 126 Ga. App. 123, 125 (2a) (190 SE2d 123) (1972), dealing with the return of a search warrant after execution being a mere ministerial act, have no application to facts in this case. The case here deals with an action filed *prior* to the return to the judge or court and while the property is still in the hands of the search officer. This case does not turn on whether the return was ministerial, nor does the fact it was or was not a ministerial act have any bearing. The only part the return has in this case is to determine where the property was when the action was filed and if a case was pending. Posey

had the property at the time the action was filed and he had not filed a return. Thus, no case was pending; Posey was the proper party; and Tracy had no reason to be a party. He did not have possession nor any direction until the return to him or the court. For this reason I would reverse.

Beck and Hyman also contend that Tracy never was appointed associate judge of the State Court of Dougherty County and never took the oath of office, and neither was filed with the probate court, all as required by section 11 of the 1976 Act, supra. Therefore, the warrants he issued were void.

In *Pruitt v. State,* 123 Ga. App. 659 (182 SE2d 142) (1971), this court held that a search warrant issued by a superior court judge in Bibb County, Georgia, to be executed in Houston County, Georgia (both counties in his judicial circuit) was a nullity and absolutely void for want of jurisdiction. The court went on to say the judge lacked jurisdiction to hold a court of inquiry on the person to whom the warrant was directed. The case turns on his inability to hold a court of inquiry to examine into an accusation against a person legally arrested and brought before him in compliance with Ga. L. 1966, pp. 567, 568 (Code Ann. § 27-303).

In the case before this court, Tracy helped change the law which abolished the office of judge pro hac vice and substituted the office of associate judge. However, he never was appointed, never was sworn in, and neither the appointment nor the oath ever was filed. He certainly occupied no more prominent place in the legal community than a superior court judge. Yet this court declared the superior court judge's act in a like situation void; but it now declares this associate judge's act valid.

In *Strickland v. Griffin,* 70 Ga. 541 (1883), a judge issued a judgment from his court. After this Act, the Constitution of 1868 took effect and abolished his court. The judge then issued a fi. fa. on the judgment which was issued before his court's abolishment. The Supreme Court held the fi. fa. to be invalid stating: "The objection is not that the judge of the county court was a de facto officer, and as such could perform a ministerial act; it was that he was no officer at all, either de facto or de jure, for the

purpose in question; that no such office as that in which he claimed to act was in existence at the time the execution was issued; that quoad hoc he was invested with no more power or authority than a judge whose office had expired . . ." *Strickland,* pp. 546-547. Such is the case before us. When the Act of 1976 wiped out section 11 of the prior Act and enacted a new section 11, there was no office left for Tracy to claim. The new section 11 granted new and broader powers to which Tracy never could lay claims as he was never appointed nor did he have color of appointment thereto.

The court in *Pruitt v. State,* 123 Ga. App. 659, supra, had this to say about search warrants: "The rule is that 'Proceedings for the issuance of search warrants are to be strictly construed, and every constitutional and statutory requirement must be fully met, including all formalities required by statute, before a valid search warrant may issue. Moreover, a statute prescribing the method of issuing search warrants must be read and construed in the light of, and conform in all essential respects to, the provisions of the constitution granting immunity from unreasonable searches and seizures.' 79 CJS 852, Searches and Seizures, § 71." *Pruitt,* p. 664.

Clearly, Tracy did not, prior to being appointed and sworn in on January 8, 1977, have actual authority as an associate judge to hold a court of inquiry. Just as clearly, had Tracy's authority been challenged prior to January 18, the challenge would have been upheld. Without such authority, Tracy was not an officer authorized by law to issue search warrants. Ga. L. 1966, pp. 567, 568 (Code Ann. § 27-303); *Pruitt v. State,* 123 Ga. App. 659, supra. The fact that Tracy obtained all the requisite authority prior to his receiving return of the search warrant in this case does not relate back to validate the issuance of the warrant. He simply had no authority, prior to January 18, 1977, to issue the warrant. For this reason, I would reverse.

2. The state contends that Tracy was an associate judge de facto and his acts were valid. This argument is not valid. To begin with, all of the cases talk about the necessity of upholding the acts of officers de facto to protect the public and third persons who have relied on

the validity of those acts. *Gunn v. Tackett,* 67 Ga. 725 (1881). In the case at bar, there are no rights of the public at stake and no third persons having an interest in it except Beck and Hyman. No one has been hurt. No cause was pending. No trial has been started or completed. No title to property is affected nor are any rights violated, except those of Beck and Hyman.

My position does not, as the state contends it would, jeopardize the validity of all of Tracy's judicial acts prior to January 18, 1977. Where Tracy sat as an associate judge through complete judicial proceedings without having his authority challenged, it is fair to say that the parties waived the opportunity to challenge his authority. Where, as here, his authority was challenged prior to completion of a judicial act, i. e., before return of the warrant to a court of competent jurisdiction, the challenge should not go unheeded and the patent lack of authority should not be ignored.

Next, without an exception, the cases I have read dealing with a de facto officer speak of such officer claiming it under "color of an election," "color of an appointment," "an election," or "an appointment." Not one case holds, or gives reason for one to think, that once an office has been abolished the holder of that office can continue in that office or assume duties in the replacement office without any type of claim or excuse, especially when he was active in having the former office abolished and replaced by a more responsible one.

I know of no decision which has extended the de facto protection against an attack to those acts which were not yet completed when they were challenged, and I would not do so here. The challenge interrupted the act prior to its completion. Therefore, there is not at stake any overwhelming public interest in protecting the certainty of judicial decrees and judgments in this case. The majority is overindulgent in its zeal to protect the inexcusable neglect of those in positions of enforcing and applying the laws. In so doing they would trample the rights of others. If Beck and Hyman, as petitioners in a court of law, had failed to meet the procedural requirements for their action, and had they then sought to excuse their neglect by explaining that they (like Tracy)

were not aware of those procedural requirements, the majority would have taken pen in hand to reply, "Ignorance of the law is no excuse; everyone is presumed to know the law," and I would have agreed. But I, unlike the majority, would apply this principle equally, and hold the court itself to the same rule.

I conclude by again quoting the words of Chief Justice Bleckley who said, "It is unjust to do justice by doing injustice. A just discovery cannot be made by an unjust search."

I would reverse; therefore, I dissent.

I am authorized to state that Chief Judge Bell and Judges Shulman and Birdsong join in this dissent.