A07A0017. BECK v. THE STATE.
A07A0018. DAVIS v. THE STATE.
(650 SE2d 728)

SMITH, Presiding Judge.

Greg Beck and Bruce Davis were convicted of possession of marijuana with the intent to distribute and possession of cocaine with the intent to distribute. Both men appeal, arguing that the evidence was insufficient to establish that they possessed cocaine with the intent to distribute, and that the trial court should have granted their motion to suppress because the search warrant was not signed by a proper magistrate. Beck also contends that the trial court erred in failing to recharge the jury on equal access and in considering his prior convictions at sentencing. Finding no error, we affirm.

1. Beck and Davis both contend that the State presented insufficient evidence of their intent to distribute cocaine.[1] Beck also contends that the State failed to "connect [him] to the premises" or establish that he controlled or possessed the drugs found.

On appeal, we view the evidence in the light most favorable to the verdict, and we no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but determine only if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

---

[21] See *Benton*, supra at 221-223; *Colonial Pipeline Co.*, supra at 304-305.

[1] Neither defendant challenges the sufficiency of the evidence to show possession of marijuana with the intent to distribute.

Viewed in that light, the evidence at trial established that a confidential informant made a controlled buy of marijuana from Beck at his mother's house under observation of officers with the Oconee Drug Task Force. Based on information obtained during the buy, the officers obtained a search warrant for the house. When the officers executed the warrant, they found Beck lying in the doorway of the master bedroom. Davis was lying on top of a bag of marijuana in the master bedroom. Other bags of marijuana were scattered throughout the bedroom, and more marijuana was in a soft cooler under the bed. The officers also found a bag of crack cocaine on the floor near the dresser. In the kitchen, they found two sets of digital scales on top of the refrigerator along with an empty box of plastic freezer bags and a box of plastic sandwich bags. A forensic chemist with the Georgia Bureau of Investigation crime lab testified that the bag found in the cooler contained nineteen ounces of marijuana and that the bag found on the bedroom floor contained 5.39 grams of cocaine, consisting of five individually wrapped pieces. The police found $1,466 in cash on Beck's person, including a $10 bill used in the controlled buy that took place the day before the search warrant was executed.

(a) On appeal, Beck and Davis argue that the evidence was insufficient to prove cocaine possession with intent to distribute. "To support a conviction for possession with intent to distribute, OCGA § 16-13-30 (b), the state is required to prove more than mere possession." (Citation and footnote omitted.) *Helton v. State*, 271 Ga. App. 272, 275 (b) (609 SE2d 200) (2005). But "[n]o bright line rule exists regarding the amount or type of evidence sufficient to support a conviction for possession with intent to distribute." (Citation and footnote omitted.) *Harper v. State*, 285 Ga. App. 261, 265 (1) (b) (645 SE2d 741) (2007). In *McNair v. State*, 226 Ga. App. 516 (487 SE2d 100) (1997), we noted that "[w]e have considered various kinds of additional evidence as proof of intent to distribute," including scales, packaging, and the possession of particular amounts or denominations of currency, as well as "expert testimony that the amount of contraband possessed was consistent with larger amounts usually held for sale rather than for personal use." (Citations and punctuation omitted.) Id. at 517 (1).

Here, in contrast to *McNair*, in which the only evidence was unqualified testimony that the amount of drugs was consistent with distribution, officers found a large amount of cash on Beck's person, including a recorded bill used in the controlled buy, as well as scales, plastic baggies, and scattered bags of drugs, including five individually wrapped pieces of cocaine. In addition, a police officer testified that scales are used by drug dealers to weigh narcotics. An expert need not be formally tendered if the court accepts the expert's qualifications. *Lindley v. State*, 225 Ga. App. 338, 341 (1) (484 SE2d

33) (1997). Here, not only did defense counsel make no objection, he acquiesced in and relied upon the witness's expert status in his cross-examination by eliciting the officer's testimony that scales "are used to weigh amounts of narcotics."

The evidence, though not overwhelming, was sufficient to support the charge of possession of cocaine with the intent to distribute. See *Copeland v. State*, 273 Ga. App. 850, 853-854 (2) (616 SE2d 189) (2005) (electronic scale, small plastic baggies, $2,600 in cash, and only 1.5 grams of cocaine provided sufficient evidence of possession with intent to distribute cocaine); *Jackson v. State*, 251 Ga. App. 781, 783 (2) (a) (555 SE2d 136) (2001) (sufficient evidence to support possession with intent to distribute where defendant admitted he "had been a drug dealer for several years" and officers found a total of 2.1 ounces of marijuana in ten bags, scales, and a box of plastic baggies). Compare *Parris v. State*, 226 Ga. App. 854, 856 (487 SE2d 690) (1997) ("Where no additional evidence of intent to distribute is offered, such as scales, drug paraphernalia, large amounts of cash, division of drugs into individual packages, or a prior conviction of possession with intent to distribute, the expert testimony is critical, and the conviction cannot be sustained without it.").

(b) Beck additionally argues that the evidence was insufficient to establish his connection with the premises or with the drugs. But testimony established that he lived in the house and sold drugs at that location to the confidential informant, and a marked bill from the controlled buy was found on his person. "Possession of drugs may be joint or exclusive, and actual or constructive. Where drugs are found in the immediate presence of a defendant, a jury is authorized to find that the defendant has constructive possession of the drugs." (Citations omitted.) *Lawrence v. State*, 238 Ga. App. 102, 103 (1) (517 SE2d 822) (1999). This evidence was ample to connect Beck with both the location and the contraband.

2. Beck and Davis next contend that the trial court erred in denying their motion to suppress, arguing that the search warrant was invalid because the individual who signed it was not qualified to serve as a magistrate and also was not properly appointed.

At the hearing on the motion to suppress, the Dodge County Magistrate testified that after he took office on January 3, 2005, the county administrator told him he could have a part-time assistant. At the end of February 2005, the chief magistrate hired Denae Douglas to assist him, and she was sworn in in early March. On June 2, 2005, when the Drug Task Force officer submitted the search warrant application in question, the chief magistrate was sick at home, and Douglas called him there and read the warrant application to him

over the telephone. The magistrate directed Douglas to sign the warrant, because he thought she was properly sworn in as a deputy magistrate.

Douglas, however, was not qualified to serve as a magistrate because she was younger than the minimum age requirement of 25, as set out in OCGA § 15-10-22 (a). The chief magistrate did not remember if he had entered the magistrate's oath on the minutes of the superior court. Although he believed he had reported her appointment, because she was receiving training materials, he did not know whether Douglas was issued a commission under seal from the governor's office, as required by OCGA § 15-10-3, subsections (b) (1) and (3). The clerk of court testified that no entry of an oath for Douglas appeared in the minute book and that no certification was sent to the Administrative Office of the Courts. Nevertheless, the trial court denied the motion to suppress, finding that the chief magistrate acted in good faith in appointing Douglas, that Douglas acted as a de facto magistrate, and that her act of issuing the search warrant in this case was valid.

In concluding that Douglas was a de facto magistrate, the superior court applied a long line of authority reaching back at least to *Hinton v. Lindsay*, 20 Ga. 746 (1856) (actions of justice of peace were not void although his residence in another district technically vacated his office). In *Hinton*, the court defined an officer de facto as "one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law; one who acts by color of an appointment, but is not in all respects legally qualified." Id. at 746, hn. 4. The validity of a de facto officer's acts is so well settled that it is embodied in the Code as part of OCGA § 45-2-1 (the acts of a person ineligible to hold public office "shall be valid as the acts of an officer de facto").

The defendants argue that Douglas could not act as an officer de facto for two reasons: no office of deputy magistrate existed, and even if it did, Douglas was not qualified to hold it. Relying on the principle that " '[e]very public office is the creation of some law, either statutory or constitutional in its origin,' [cit.]," *Porter v. Calhoun County Bd. of Commrs.*, 252 Ga. 446, 447 (1) (314 SE2d 649) (1984), defendants argue that no evidence established that the judges of the Dodge County Superior Court had authorized additional magistrate positions, as required by OCGA § 15-10-20 (a). The Georgia Supreme Court, however, has held that "the acts of an officer de facto cannot be attacked collaterally," but only directly in a proceeding challenging the officer's validity. *Pool v. Perdue*, 44 Ga. 454, 457-458 (2) (1871); see also *Hinton*, supra, 20 Ga. at 750. In *Pool*, the appellant challenged the validity of an attachment because the Georgia Constitution authorized only one notary public and ex officio justice of the peace

per militia district, the jurisdiction contained only four militia districts, and the attachment was issued by an officer commissioned after four such officers already existed. Id. at 456. While the Supreme Court agreed that there could be only one legal justice of the peace per militia district, it affirmed the second justice's actions as a de facto official in the absence of an actual office. Id. at 458. "[A]s a de facto officer [Douglas's] acts cannot be collaterally attacked and set aside. [Cit.]" *Little v. State,* 157 Ga. App. 462, 463 (2) (278 SE2d 17) (1981). The fact that Douglas was not old enough to serve as a magistrate or that other statutory prerequisites were unfulfilled likewise does not invalidate the search warrant.

> [E]ven assuming irregularities exist concerning the position of the magistrate, we conclude the magistrate was an officer de facto and that her acts while sitting as magistrate, including the issuance of the search warrant in question, are valid. [Cits.]

*McLendon v. State,* 259 Ga. 778, 779 (2) (387 SE2d 133) (1990). "[T]he fact that a person is ineligible to hold a particular office, or has failed to take an oath, does not prevent that person from being an officer de facto, and while de facto in such office, competent to act therein. [Cits.]" *Freeman v. State,* 172 Ga. App. 168 (1) (322 SE2d 289) (1984). The trial court did not err in denying the motions to suppress.

3. Beck contends that the trial court erred in failing to recharge the jury on the doctrine of equal access when it asked a question during deliberation about the types of possession. The trial court recharged the jury on sole and joint possession and actual and constructive possession. Beck then objected to the court's failure to recharge on equal access. We find no error. "Equal access is merely a defense available to the accused to whom a presumption of possession flows." *Lance v. State,* 191 Ga. App. 701, 703 (2) (382 SE2d 726) (1989). The record contains no evidence of access to the premises by anyone other than the defendants, only evidence that Beck and Davis jointly possessed the drugs, actually or constructively, and a charge on equal access was not required. See *Jones v. State,* 200 Ga. App. 519, 520 (2) (b) (408 SE2d 823) (1991).

4. Finally, Beck argues that the trial court erred in considering his prior guilty pleas during sentencing as a recidivist, because the State failed to establish that he voluntarily waived his right to counsel. But "the burden in non-death penalty cases is on the recidivism defendant rather than the State to prove by a preponderance of the evidence that a previous guilty plea was not knowingly and voluntarily entered." (Citation and footnote omitted.) *Nash v. State,* 271 Ga. 281 (519 SE2d 893) (1999). Because Beck failed to make this

showing, the trial court did not err in considering his two prior guilty pleas during sentencing.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED JULY 12, 2007 — 

*Steven M. Harrison,* for appellant (case no. A07A0017).

*Smith & Cannon, Chester L. Cannon, Jr.,* for appellant (case no. A07A0018).

*Timothy G. Vaughn, District Attorney,* for appellee.