## A99A0319. SIMMONS v. THE STATE.
(510 SE2d 925)

ELDRIDGE, Judge.

The defendant, Moses Simmons, was convicted by a Chatham County jury for the offense of armed robbery. He appeals from the denial of his motion for new trial.

1. The defendant contends the trial court erred in denying his motion for a directed verdict of acquittal[1] and that the evidence adduced at trial was insufficient to support his conviction for armed robbery.

---

[1] In his enumeration of error, Simmons states that the trial court erred in denying his motion for mistrial. This appears to be a stenographic error, because in his brief, Simmons refers only to the portion of the trial transcript in which he moved for a directed verdict, and his sole argument is that the trial court erred in denying his motion for directed verdict. Simmons did not move for a mistrial at any time during the trial. Therefore, we will treat Simmons' enumeration of error as raising the issue of whether the trial court erred in denying the defendant's motion for directed verdict.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Wright v. State*, 228 Ga. App. 779 (1) (492 SE2d 680) (1997).

Viewed in this light, the evidence shows the following: During the very early morning hours of Sunday, June 29, 1997, Darren Williams was walking home from his mother's house. Several blocks from his mother's house, a car with two occupants passed Williams going in the opposite direction. The passenger of the car waved at Williams and Williams waved back. Williams had walked approximately another block when the same car came up behind him. The passenger door was closest to him. The defendant, who was seated in the passenger seat, jumped out of the car, pulled a gun from his pants, and pointed the gun at Williams demanding that he "give it up." Williams gave the defendant the contents of his pockets, which consisted of $40, a pager, and a set of keys.

When Williams reached his home, he called the police and reported the incident. Officer Eric Dukarski of the Savannah Police Department responded to the call from Williams. Williams was able to give Officer Dukarski the car's tag number and a detailed description of the defendant. The tag number matched the tag number of a car stolen from Epluribus Allan on June 28, 1997, between 8:30 p.m. and 11:00 p.m., which was just hours before the armed robbery.

Williams testified that the area within which the armed robbery occurred was well lighted. There were street lights, and during the robbery, the door of the car was open and the dome light of the car was on. He was able to see the defendant clearly. Williams further testified that the defendant did not have his face covered in any manner and that, even though the defendant had on a cap with a white "C" on it, it was not pulled low over his brow and did not obstruct Williams' vision of the defendant's face.

At approximately 4:50 p.m. on June 29, 1997, Officer Eduardo Cartaya of the Savannah Police Department was on patrol in his marked police car looking for Allan's stolen vehicle when he received a dispatch that shots had been fired at 327 Montgomery Crossroads, and that the vehicle involved in the incident matched the description and had the same tag number as Allan's stolen car. The dispatcher indicated that the car was possibly en route to Chatham Garden Apartments.

When Officer Cartaya received the dispatch, he was in front of the entrance to Chatham Garden Apartments, so he pulled over and

waited. Cartaya testified that about 60 to 90 seconds later, he saw the car coming south on Middleground Road and turn in Chatham Garden Apartments. Cartaya pulled in behind the car and called for back-up. Cartaya did not activate his blue lights, because he thought the suspects might be armed. Cartaya testified that the passengers of the car noticed he was following them, and the driver "suddenly hit the accelerator and sped out of the apartment complex," running the stop sign at the entrance.

Cartaya pursued the fleeing car and "called in" the direction in which it was traveling. About a half mile north, in front of Southside Mobile Estates, the driver of the car attempted to make a U-turn and lost control of the car. The car fishtailed and went into the trailer park. The three occupants of the car jumped out of the car while it was still moving. Other police officers arrived on the scene within minutes, and the officers were able to apprehend two of the passengers, Chancey Smith and Patrick Fields. The third passenger was not apprehended.

Detective N. S. Kenny of the Savannah Police Department interviewed Chancey Smith after his arrest. In his statement, Smith stated that the defendant was the third occupant of the car. At trial, Smith testified that he, Patrick Fields, and the defendant were in the car.

Detective Larry Driver of the Savannah Police Department initially put together two photographic line-ups for Williams to view. One photographic line-up contained a picture of Patrick Fields and the other photographic line-up contained a picture of Chancey Smith. Williams was unable to identify the man who had robbed him at gunpoint from either of these two line-ups. After Detective Driver received the defendant's name from Detective Kenny, he prepared a third photographic line-up for Williams to view. Within five to fifteen seconds after being shown the third photographic line-up, Williams identified the defendant as the man who had robbed him at gunpoint. Williams also identified the defendant in court as the man who had robbed him at gunpoint.

The defendant argues that, because the stolen items or the gun were not recovered and there was evidence that Fields possessed a weapon, was riding in the stolen car, and was wearing a cap with a "C" on the day the robbery, there was insufficient evidence to convict the defendant of armed robbery. "However, these issues relate entirely to matters within the exclusive province of a jury. Determining the credibility of witnesses and resolving conflicts goes to the weight of the evidence and is for the jury's consideration." (Citation and punctuation omitted.) *Foster v. State*, 203 Ga. App. 328, 330 (416 SE2d 855) (1992). "This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or

assess the credibility of the witnesses." (Citations and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997). Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find the defendant guilty of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant also contends the trial court erred when it denied his motion in limine and allowed evidence that the defendant was a passenger in a stolen car. The defendant argues that such evidence impermissibly injected his character into issue.

The evidence of the defendant's presence in the stolen car was part of the circumstances surrounding the accused's arrest. "All circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them." (Citation and punctuation omitted.) *Wilson v. State*, 222 Ga. App. 818, 819 (476 SE2d 97) (1996). "Where evidence is relevant for the purpose of showing the circumstances of the arrest, it will not be excluded merely because it incidentally shows the commission of another crime. Although evidence may incidentally put character in issue or may be prejudicial, it may be admitted if otherwise relevant." (Citations and punctuation omitted.) *Franklin v. State*, 224 Ga. App. 578, 579 (3) (481 SE2d 852) (1997). Here, the evidence shows that the defendant exited a stolen car and robbed Williams at gunpoint. Only hours later, during a police pursuit of the same stolen car, the defendant jumped out of the car while it was still moving. The evidence of the stolen car was, thus, relevant and admissible.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 25, 1999 —

C. *Jackson Burch, Emory B. Bazemore*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney*, for appellee.