A99A1338. GILLMAN v. THE STATE.
(522 SE2d 284)

SMITH, Judge.

Eddie Gene Gillman was indicted on charges of possession with intent to distribute cocaine and marijuana. He was tried by a jury, which found him guilty as charged. His motion for new trial, as amended, was denied, and he brings this appeal. We find no error, and we affirm.

1. Gillman raises the general grounds. Construed to support the verdict, the evidence presented at trial showed that Sergeant Chris Cannon of the East Metro Drug Enforcement Team (EMDET) arranged for an informant, Mary Durrance, to participate in a controlled drug "buy bust" operation on October 4, 1996. Cannon picked up Durrance at her home. They stopped at a grocery store, where Durrance paged Gillman. When the page was returned, a drug purchase was arranged for later that afternoon.

After picking up the supplies necessary for the operation, a search of Durrance and her purse was conducted and she was equipped with a body bug and given $400 of government funds to buy an "eight-ball" of cocaine. Cannon and Durrance then traveled to a service station, where Durrance again paged Gillman. Durrance received a return call, and she and Gillman arranged to meet at the parking lot of the service station, where four other agents were stationed. Gillman arrived and "cruised" around the parking lot in a manner Cannon described as calculated to check the area to see if police officers were present. Durrance entered the vehicle driven by Gillman, he asked her what she wanted, and she told him "whatever $400 would buy." She then gave him $350, and he handed her two bags containing cocaine.

At a prearranged verbal signal, the officers moved in and arrested

Gillman, and Cannon took Durrance out of the car. A pager, a glass vial containing off-white chunky material, and $350 in cash were found on Gillman's person. A scanner and a cell phone were found in the car. Bags with markings indicating drug units were found on the driver's seat, along with a black jacket in which a set of scales and syringes were found. Bags with markings indicating drug units were found on the driver's seat. Cannon testified that these items were typically used in and were consistent with drug dealing. A large quantity of cocaine and marijuana, packaged for resale, was found in several locations in the car. Gillman denied that the drugs were his.

Gillman maintains that because no drugs were found on his person, the vehicle he was driving did not belong to him, and the informant's undergarments were not searched before she entered his car, the evidence was insufficient to support his conviction. This contention is without merit. Gillman apparently did not own the car he was driving, having picked it up that morning from a used car lot for a "test drive." But Gillman presented no evidence that the drugs and drug paraphernalia, such as scales and syringes, were placed there by the used car dealer, and it strains credulity that they would have been. Similarly, although Cannon testified that he did not search inside Durrance's bra because no female officer was available, he did conduct a pat-down, he did search her purse, and he did require Durrance to turn out all her pockets and step out of her shoes. Items such as the scales and syringes would not have escaped detection.

Gillman was in possession and control of a vehicle containing overwhelming evidence of drug dealing. Large amounts of drugs were found in the car. A reliable informant testified that Gillman sold her drugs. The evidence presented was certainly sufficient to authorize the jury to find Gillman guilty as charged, under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Leming v. State*, 235 Ga. App. 710, 711-712 (2) (510 SE2d 364) (1998).

2. During the sentencing phase of the trial, the State introduced a certified copy of a guilty plea previously entered by Gillman to charges of selling various drugs. Gillman objected on two grounds to the introduction of this evidence. The first basis for his objection was that the proceedings had an appearance of impropriety because the trial judge had been the district attorney when Gillman entered his previous guilty plea. The second ground was that the prior plea was not entered into knowingly and voluntarily. The trial judge refused to disqualify himself from sentencing Gillman, stating that without being shown any authority he saw no ground for recusal simply because of his former position as district attorney. The trial judge did recuse himself, however, from deciding the issue of whether the previous plea was voluntarily entered, and a different judge held a hear-

ing on that issue. At that hearing, Gillman testified, but his former counsel were not called. In a lengthy and detailed order, after noting that Gillman's two attorneys and his wife had been present when the plea was entered and that Gillman served six years in prison for that offense without ever mentioning that he felt he had been coerced to enter a guilty plea, the judge ruled that Gillman's former plea had indeed been entered knowingly and voluntarily.

On appeal, Gillman again raises both grounds raised below in support of his request that the trial court not consider the prior guilty plea.

(a) We disagree with Gillman's assertion that the prior guilty plea was not entered knowingly and voluntarily. The Supreme Court of Georgia recently revised the scheme regarding the allocation of burdens of proof in hearings to determine the voluntariness of guilty pleas used in sentence enhancement. *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999). Previously, once a defendant raised the issue of intelligent and voluntary waiver with respect to prior guilty pleas, the burden was on the State to establish a valid waiver. *Manker v. State*, 223 Ga. App. 3, 6 (5) (476 SE2d 785) (1996). The State was permitted to carry this burden in two ways: a showing on the record of the previous guilty plea hearing that the defendant was aware of the rights he was waiving and the possible consequences of the plea, or, alternatively, filling a silent record by using extrinsic evidence showing that the plea was knowing and voluntary. *Craft v. State*, 234 Ga. App. 305, 307 (1) (506 SE2d 663) (1998).

In *Nash*, supra, the Supreme Court held that *Pope v. State*, 256 Ga. 195, 209 (17) (345 SE2d 831) (1986), which previously controlled this issue, does not apply to sentence enhancement in non-death penalty cases. Instead, *Parke v. Raley*, 506 U. S. 20 (113 SC 517, 121 LE2d 391) (1992),

> applies to collateral attacks on final judgments in Georgia so as to place the burden of production on the recidivism defendant rather than the State when the defendant seeks under *Boykin v. Alabama*, [395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969)] to challenge the validity of a prior guilty plea used to enhance a sentence pursuant to OCGA § 17-10-7 (a).

*Nash*, supra.

Here, as in *Nash*, the trial court was operating under the belief that the State had the burden of showing that the plea was voluntary. In *Nash*, under that circumstance, the Supreme Court remanded the case to allow Nash an opportunity to attempt to meet his burden of production at a hearing. Id. We conclude that in this

case, however, it is not necessary to do so.

The transcript of the hearing shows that the State tendered into evidence a plea form in which Gillman indicated, by his answers to a number of questions, that he understood his rights, the proceedings, and the consequences of the plea, and in which he also acknowledged the lack of coercion. On the form, his counsel certified that he had investigated the facts of the case and that he had reviewed the questions with Gillman and that Gillman had indicated his understanding of them. Unlike the situation in *Nash*, where no evidence was adduced by the defendant to carry his burden, in this case Gillman took the stand. Gillman testified that his plea had not been voluntary because he himself had not checked off the answers on the form. But he testified that he could read and write, and he acknowledged that he signed the form. Moreover, he did not hesitate in acknowledging his guilt of the offense to which he pled guilty.

Given this testimony, we conclude that a remand such as the one ordered in *Nash* would serve no useful purpose. Under the new standard set forth in *Nash* and applying *Parke v. Raley*, supra, we must presume in this situation the regularity and legality of the prior plea hearing and the conscientious application of the *Boykin* colloquies. This is so even in the absence of a transcript of the plea hearing, unless the defendant produces evidence of invalidity once the fact of conviction is proved and the State shows that he was represented by counsel at that hearing. The State carried its burden under *Nash* in this case; given his testimony, Gillman cannot satisfy his. We conclude that even given the shifted burden of producing evidence, the trial court therefore did not err in considering the prior guilty plea in enhancement of sentence.

(b) Gillman also contends the trial judge erred in failing to recuse himself based upon an appearance of impropriety created by the trial judge's service as district attorney when Gillman's previous guilty plea was entered. We have found no authority in Georgia law supporting Gillman's contention that failure to recuse was error under these circumstances. But even if it was error, we are unable to discern harm to Gillman, given our determination that the previous guilty plea was knowingly and voluntarily entered and Gillman's admission on the record that he was indeed guilty of that offense.

Moreover, motions to recuse must be timely. They must be made " 'as soon as the facts demonstrating the basis for disqualification become known.' " *Pope v. State*, supra at 214 (26). Uniform Superior Court Rule 25.1 provides that such motions must be made "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification," unless good cause is shown. In this case, trial was held on November 11, 1997. On that date at the very latest, Gillman was certainly aware that the trial judge had been the district

attorney at the time the former plea was entered. A hearing on the voluntariness of that former guilty plea was held on November 20, 1997. A motion for recusal was not made, however, until August 20, 1998, after the voluntariness of the former plea had been determined and Gillman had been sentenced. If Gillman was aware of a possible basis for recusal, he had no right to sit back, hope for a favorable ruling or sentencing, and then raise the issue for the first time on appeal. *Pope*, supra at 214 (26). Gillman has therefore failed to preserve this issue for review. *Harris v. State*, 202 Ga. App. 618, 622-623 (7) (414 SE2d 919) (1992).

3. We do not agree with Gillman that his trial counsel was ineffective because he failed to file a motion for recusal. Under the guidelines established in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), it is well established that a strong presumption exists that trial counsel's performance was effective and that any particular challenged action or omission "might be considered sound strategy." (Citation and punctuation omitted.) *Ferrell v. State*, 261 Ga. 115, 119 (3) (401 SE2d 741) (1991). In this case, Gillman's trial counsel was called as a witness at the hearing on the motion for new trial. He testified that he researched the law carefully on the issue of recusal, and he felt that such a motion would not be granted. He did not make such a motion because in his opinion it might have been considered frivolous. Because this decision was a matter of strategy, it may not be considered on the issue of counsel's effectiveness.

4. We find no merit in Gillman's contention that the trial court made improper comment on the evidence in violation of OCGA § 17-8-57. As best we understand Gillman's contention, he argues that the trial court prejudiced him by making the alleged improper comment while ruling that defense counsel could not proceed with a certain line of questioning when cross-examining Durrance. Gillman's defense was based on the theory that Durrance had brought the drugs, which had a street value of approximately $1,000, into the car driven by Gillman. Durrance testified she was paid $100 for participating in this "buy bust." When defense counsel asked the witness when her husband had left her, the question was objected to by the State on the ground of relevance. The defense argued that it was relevant to show the witness's income. In sustaining the State's objection, the trial court commented to counsel: "Well, Counselor, as the State just pointed out, why would somebody who had thousands of dollars of drugs exchange that for $100?"

Even assuming this comment somehow prejudiced Gillman, it was made when the trial court was explaining to counsel the reason for his ruling sustaining the State's objection. It is well established that a judge's remarks made when assigning reasons for rulings "are

neither an expression of opinion nor a comment on the evidence." (Citation and punctuation omitted.) *Faulkner v. State*, 186 Ga. App. 879, 880 (2) (368 SE2d 820) (1988).

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 9, 1999.

*Melanie R. Metcalf*, for appellant.
*Alan A. Cook, District Attorney, Jay M. Jackson, Assistant District Attorney*, for appellee.