## A01A0878. JACKSON v. THE STATE.
(555 SE2d 136)

RUFFIN, Judge.

A jury found Jimmy Jackson guilty of possession of marijuana with intent to distribute, possession of marijuana, possession of diphenhydramine, and possession of doxylamine. For sentencing purposes, the trial court merged the possession of marijuana charge with the charge for possession of marijuana with intent to distribute, and it sentenced Jackson to 12 years.[1] On appeal, Jackson challenges the sufficiency of the evidence. He also contends that the trial court erred in admitting evidence of a similar transaction and in failing to dismiss his conviction for possession of marijuana. For reasons that follow, we affirm in part and reverse in part.

The evidence shows that, on March 12, 1998, Detective James Carden from Chattanooga, Tennessee, received information from the post office that a package shipped through the mail contained a large amount of marijuana. Carden arranged for a controlled delivery of the package, which was picked up by Jose Salazar. Salazar agreed to cooperate with the police, and he called Jackson, the purchaser of the marijuana, and arranged for him to pick up the package.

Jackson arrived, as scheduled, to pick up the marijuana. Unbeknownst to Jackson, his conversation with Salazar was monitored and recorded by Tennessee law enforcement officers. According to Detective Jeff Parton, an undercover officer present during the transaction, Jackson negotiated with Salazar over the price of the marijuana. Jackson also discussed the steps that he would take to avoid being caught selling drugs, explaining that he planned to stay and visit when he picked up the marijuana to "make it look more natural" and that he never allowed purchasers to come to his house. Jackson also said that he still had approximately five ounces of marijuana left at his house.

That same day, Tennessee law enforcement notified Brad Palmer, an investigator with the Catoosa County Sheriff's Department, that Jackson had just been arrested for possessing over ten pounds of marijuana. Palmer and Deputy Travis Head then executed a search warrant at Jackson's Georgia home and discovered a wooden tray, a set of scales, a box of plastic baggies, and ten baggies of marijuana, totaling 2.1 ounces. Palmer testified that the wooden tray is used for cutting the marijuana, the scales are used to weigh the marijuana, and the baggies are used to package the marijuana. Palmer also found two bags of blue pills, which he could not identify.

---

[1] Specifically, the trial court sentenced Jackson to ten years for possession of marijuana with intent to distribute and two, consecutive sentences of twelve months each for the remaining possession charges.

According to a forensic chemist, one bag contained doxylamine pills and the other contained diphenhydramine pills, both of which are classified as dangerous drugs.

1. In his first enumeration of error, Jackson asserts that the trial court erred in admitting evidence of his arrest in Tennessee. According to Jackson, the evidence showed that the crime in Georgia was mere possession, whereas the crime in "Tennessee was one for distribution to others." Thus, Jackson maintains that evidence of the Tennessee arrest was inadmissible as a similar transaction. We find this argument unavailing.

We will uphold a trial court's decision to admit evidence unless clearly erroneous.[2] Here, the trial court found that evidence of the Tennessee transaction was admissible as it related to Jackson's bent of mind, course of conduct, intent, and identity. Thus, the trial court admitted the evidence of the similar transaction for proper purposes.[3] As for the degree of similarity, we note that "[t]he similar transaction need not be identical to the charged offense to be admissible."[4] And, although the amount of marijuana found in Jackson's home was substantially less than the ten pounds he had in Tennessee, it does not follow that the two transactions were dissimilar because of the difference in amount. In addition to the marijuana, which was packaged in individual baggies as though for resale, law enforcement officers found scales and additional baggies. Such evidence supports an inference that the marijuana was for sale rather than for personal use.[5] Under these circumstances, the trial court's decision to admit evidence of the prior transaction cannot be deemed clearly erroneous.

Moreover, even if the evidence was improperly admitted as a similar transaction, it would have nonetheless been admissible as part of the circumstances surrounding Jackson's arrest in Georgia. As a general rule, "[a]ll circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them."[6] This is true even if the evidence implicates the defendant in another crime.[7] Here, the *sole* reason the Georgia officers were able to obtain a warrant to search Jackson's Georgia home was because Jackson had been arrested that same day in Tennessee and had made incrim-

---

[2] See *Rehberger v. State*, 235 Ga. App. 827, 829 (2) (510 SE2d 594) (1998).

[3] See *Jones v. State*, 243 Ga. App. 374, 377 (2) (533 SE2d 437) (2000).

[4] (Punctuation omitted.) *Jackson v. State*, 246 Ga. App. 133, 135 (2) (539 SE2d 849) (2000).

[5] See *Gillman v. State*, 239 Ga. App. 880-881 (1) (522 SE2d 284) (1999) (scales and marijuana packaged for resale constitute evidence that defendant was guilty of possession with intent to distribute).

[6] (Punctuation omitted.) *Simmons v. State*, 236 Ga. App. 83, 86 (2) (510 SE2d 925) (1999).

[7] See id.

inating statements in which he claimed to have marijuana at home. Thus, the evidence of the Tennessee transaction was both admissible and relevant to explain the conduct of the law enforcement officers in Georgia.[8]

2. In two enumerations of error, Jackson challenges the sufficiency of the evidence. Having been convicted, Jackson no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to support the jury's verdict.[9] In so doing, we neither weigh the evidence nor determine witness credibility, but merely ascertain whether the evidence was sufficient to establish Jackson's guilt beyond a reasonable doubt.[10]

(a) With respect to his conviction for possession of marijuana with intent to distribute, Jackson argues that the evidence was insufficient to establish intent to distribute. We disagree.

"To support a conviction of possession of a controlled substance with intent to distribute, the State must prove possession and link that possession to the enterprise of the sale."[11] Such link may be established through circumstantial evidence.[12] As noted above, in addition to finding marijuana at Jackson's residence, law enforcement officers found scales and baggies, which serve to link Jackson's possession of the drugs to the enterprise of sale.[13] Moreover, Jackson testified and admitted that he had been a drug dealer for several years. Under these circumstances, the jury was authorized to conclude beyond a reasonable doubt that Jackson was guilty of possessing marijuana with intent to distribute.

(b) With respect to Jackson's convictions for possessing marijuana and doxylamine, he argues that the evidence was insufficient to establish that the drugs were, in fact, his. In support of this argument, Jackson points to the testimony of various family members. Jackson's wife, Lisa, testified that, several days before March 12, her husband moved out of the house after an argument and that he was not living there at the time the search warrant was executed.[14] According to Lisa Jackson, who pled guilty to possessing marijuana, she bought the drugs on March 11, using $400 from an income tax check. On cross-examination, however, she admitted that she had

---

[8] See id.

[9] See *Bluain v. State*, 242 Ga. App. 125 (1) (529 SE2d 155) (2000).

[10] See id.

[11] *Buckholts v. State*, 247 Ga. App. 697, 699 (1) (545 SE2d 99) (2001).

[12] See id.

[13] See id.; *Gillman*, supra.

[14] Jackson's mother and daughter also testified that Jackson had stayed with them during the month of March. The daughter could not pinpoint the days that Jackson stayed with her, and the mother testified that she "assum[ed]" he stayed with her the night of March 11, because he was arrested the next day.

never worked. When asked how she had received an income tax check, she claimed that, notwithstanding their separation, her husband returned on March 11 to cash his income tax check, which he shared with his estranged wife. As for the doxylamine pills, Lisa testified that she purchased the pills, which she identified as Unisom, at Walgreens in individually wrapped blister packs. She then opened each blister pack, removed the pills, put them in a bag, and hid the bag in the kitchen. Jackson essentially argues that this testimony mandates his acquittal. Again, we disagree.

Implicit in Jackson's sufficiency argument is his belief that his wife's guilt exonerates him. This is untrue. "Since two or more persons may be convicted of possession of the same contraband, there is nothing about [Lisa Jackson's] guilt which is on its face inconsistent with the case against [Jackson]."[15] And, to the extent that Lisa Jackson testified that the drugs belonged solely to her and that her husband had no knowledge that she possessed the contraband, the jury was not required to believe her. "[I]t is axiomatic that the credibility of the witnesses is solely a jury question."[16] Here, the jury certainly could have found Lisa Jackson's testimony implausible.

(c) Nonetheless, we agree with Jackson that the State failed to prove that he was guilty of possession of diphenhydramine. Under OCGA § 16-13-72, "[e]xcept as provided for in this article, it shall be unlawful for any person . . . to . . . possess in this state any dangerous drug." Both diphenhydramine and doxylamine are classified as dangerous drugs.[17] For diphenhydramine, however, there is an exception for "up to 12.5 mg. in each 5 cc's when used in cough preparations and up to 50 mg. per single dose when used as a nighttime sleep aid or used as an antihistamine and labeled in compliance with [federal Food & Drug Administration] requirements."[18] Here, the forensic chemist testified that the pills were diphenhydramine, but she did not testify as to the amount, in milligrams, contained in the pills, nor did she testify that the pills failed to comply with FDA labeling requirements. Indeed, the chemist testified that she did not know whether the pills could have been purchased over the counter. Thus, the State failed to prove that the diphenhydramine pills were dangerous drugs, and Jackson was entitled to an acquittal on this charge.[19]

3. In his final enumeration of error, Jackson contends that the

---

[15] (Punctuation omitted.) *Wells v. State*, 237 Ga. App. 109, 111 (1) (514 SE2d 245) (1999).

[16] (Punctuation omitted.) *Legg v. State*, 204 Ga. App. 356, 357 (1) (419 SE2d 151) (1992).

[17] See OCGA § 16-13-71 (b) (299), (322).

[18] OCGA § 16-13-71 (c) (8).

[19] See *Hildebrand v. State*, 209 Ga. App. 507, 508 (1) (433 SE2d 443) (1993) (State's failure to prove essential element of crime warranted directed verdict of acquittal).

trial court erred in failing to dismiss his conviction for possession of marijuana, asserting that it merged with his conviction for possession with intent to distribute. Jackson maintains that his conviction for both offenses violates OCGA § 16-1-7, which precludes multiple convictions and punishment for the same conduct.

Initially, we note that Jackson failed to preserve this issue for appeal. "It was incumbent upon [Jackson] to make objection at sentencing or to make a proper motion at sentencing if sentenced in violation of OCGA § 16-1-7."[20] Our review of the record shows no such objection or motion was made, and Jackson's failure to preserve the issue precludes appellate review.[21]

Even assuming Jackson preserved the issue, this claim of error presents no basis for reversal. As noted above, the trial court merged the two offenses and entered a judgment of conviction and sentence only on the possession with intent to distribute count. It follows that the trial court did not violate OCGA § 16-1-7.[22]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 9, 2001 — ■■■■■■■■

*Brian M. House*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Jennifer E. Hildebrand, Assistant District Attorney*, for appellee.

---

[20] *Williams v. State*, 233 Ga. App. 217, 220 (4) (504 SE2d 53) (1998).
[21] See id. at 221.
[22] See *Mackey v. State*, 235 Ga. App. 209, 210 (1) (509 SE2d 68) (1998).