A02A0280. McGEE v. THE STATE.
(566 SE2d 431)

RUFFIN, Judge.

In November 1997, a jury found David McGee guilty of violating the Georgia Racketeer Influenced and Corrupt Organizations

---

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

("RICO") Act.[1] The trial court subsequently granted him permission to file an out-of-time appeal. On appeal, he challenges the sufficiency of the evidence presented to corroborate an accomplice's testimony, as well as his trial counsel's effectiveness. He also claims that the trial court erred in admitting evidence at sentencing. For reasons that follow, we affirm.

1. When reviewing the sufficiency of the evidence, we do not weigh the evidence or assess witness credibility.[2] Instead, we view the evidence in the light most favorable to support the jury's verdict and determine whether a rational trier of fact could find each essential element of the crime charged beyond a reasonable doubt.[3]

Viewed in this manner, the evidence showed that the McGee family was involved in the illicit drug trade. According to McGee's mother, Katie Mae, she and other family members sold cocaine out of her house in Macon. Katie Mae further testified that McGee supplied the cocaine for the family business, bringing three or four cocaine "cookies" to the house each week. Various family members sold the cocaine and then paid McGee $1,300 per cookie out of the sale proceeds. Katie Mae also indicated that, by 1997, McGee had been supplying cocaine to the family for several years.

Louise Gooden, Katie Mae's cousin, participated in this enterprise. Like Katie Mae, Gooden testified that McGee supplied the cocaine sold from the house. Ellen McGee, McGee's sister, similarly told the jury that McGee supplied cocaine for the family's drug activities during the several years preceding his 1997 trial. Ellen and Gooden also testified that McGee charged his family $1,300 for each cocaine cookie.

On April 16, 1996, Macon police officers executed a search warrant at Katie Mae's house and found 4.8 grams of cocaine in a bedroom. Police searched the house again on May 16, 1997, and discovered four cookies of crack cocaine hidden in a flower pot. Gooden, who was present during that search, also gave police a bag of cocaine that she had hidden in a trash can. Laboratory tests showed that police seized 96.3 grams of 94 percent pure cocaine from Katie Mae's home on May 16, 1997.

Gooden testified that McGee supplied the cocaine seized by police on May 16, 1997. Katie Mae similarly testified that McGee brought this cocaine to the house. Although she did not actually observe cocaine in McGee's possession, Katie Mae saw him with a package, which he gave to Gooden. Gooden then told Katie Mae that McGee had " 'brought the stuff.' " Katie Mae testified that Gooden

---

[1] See OCGA § 16-14-1 et seq.
[2] See *Askew v. State*, 248 Ga. App. 230 (1) (546 SE2d 15) (2001).
[3] See id.

made this type of statement to her each time McGee delivered cocaine.

To satisfy its burden of proof in a RICO prosecution, the State must show that the defendant engaged in at least two similar or interrelated incidents of racketeering activity.[4] In this case, the State asserted that McGee and others engaged in ten racketeering activities or predicate acts. With respect to the ninth predicate act, the State alleged that, on or about April 16, 1996, McGee and the others possessed cocaine with the intent to distribute it. For the tenth predicate act, the State alleged that, on or about May 16, 1997, these individuals trafficked in cocaine. In reaching its guilty verdict, the jury concluded that McGee engaged in the ninth and tenth predicate acts.

On appeal, McGee does not challenge the interrelatedness of these acts, attack the evidence supporting the ninth predicate act, or question the applicability of the RICO statute. Instead, he argues that the State presented insufficient evidence to support Gooden's testimony relating to the tenth predicate act — drug trafficking. Noting that a conviction cannot stem solely from an accomplice's testimony,[5] McGee claims that only Gooden's uncorroborated assertions tied him to the 96.3 grams of cocaine seized from Katie Mae's home on May 16, 1997. According to McGee, because the State failed to corroborate Gooden's testimony, it did not sufficiently prove his participation in the tenth predicate act, undermining his RICO conviction. We disagree.

Although "[a]n accomplice's testimony as to the identity and participation of the defendant . . . must be corroborated[,] [w]here, as here, more than one accomplice testifies at trial, the testimony of one accomplice may be corroborated by the testimony of the others."[6] This corroboration need only be slight and may be circumstantial.[7] Ultimately, the jury decides the sufficiency of the corroborating evidence.[8]

Gooden testified that McGee supplied the cocaine seized from the house on May 16, 1997. Katie Mae similarly testified that McGee provided this cocaine. On cross-examination, Katie Mae admitted that she did not actually see McGee with the cocaine. Nevertheless, she saw him with a package and then observed that package in Gooden's hand, and Gooden told her that McGee had " 'brought the stuff.' " Furthermore, both Katie Mae and Ellen McGee testified that McGee supplied the cocaine used in the family drug business in 1997.

---

[4] See *Davitte v. State*, 238 Ga. App. 720, 723 (1) (a) (520 SE2d 239) (1999).
[5] See OCGA § 24-4-8.
[6] (Citations omitted.) *Hanifa v. State*, 269 Ga. 797, 808-809 (7) (505 SE2d 731) (1998).
[7] See *Wilbanks v. State*, 251 Ga. App. 248, 259-260 (8) (554 SE2d 248) (2001).
[8] See id. at 259.

Citing *Brookshire v. State*,[9] McGee argues that Gooden's statement to Katie Mae must be disregarded as nonprobative hearsay. Although not addressed by the parties or the court, the statement appears to fall within the co-conspirator exception to the hearsay rule.[10] Even without that statement, however, Katie Mae's testimony about the package McGee gave Gooden, as well as the general testimony that McGee supplied the family with drugs to sell in 1997, sufficiently corroborated Gooden's testimony connecting McGee to the 96.3 grams of cocaine seized from the house on May 16, 1997.[11]

2. McGee also argues that he received ineffective assistance of counsel at trial. To succeed in this claim, he must prove "(1) that his trial counsel's performance was deficient, and (2) that but for this deficiency the outcome of the trial would have been different."[12] In so doing, McGee must overcome the strong presumption that trial counsel performed within the wide range of reasonable professional conduct and that any challenged conduct might be considered sound trial strategy.[13]

Following a hearing on McGee's motion for new trial, the trial court concluded that McGee received effective assistance of counsel. We will not reverse that decision absent clear error,[14] and, as discussed below, we find no error in this case.

(a) McGee claims that trial counsel deficiently failed "to subpoena and call as witnesses various persons who would have rebutted the State's theory that he was involved in his family's drug dealing." At the hearing on McGee's motion for new trial, counsel testified that he interviewed many of these witnesses, but determined that their potential testimony was not particularly strong. He concluded, therefore, that he did not want to waive the right to open and conclude closing arguments by calling the witnesses. This type of strategic decision, made after a thorough investigation, is virtually unchallengeable.[15]

Furthermore, even if trial counsel's performance could be deemed deficient, McGee has not shown prejudice. At the new trial hearing, McGee described how, in his view, these witnesses would have testified at trial. None of the witnesses, however, appeared at

---

[9] 230 Ga. App. 418, 420 (496 SE2d 757) (1998) (physical precedent only).
[10] See OCGA § 24-3-5.
[11] See *Wilbanks*, supra.
[12] *Blackford v. State*, 251 Ga. App. 324, 328 (4) (554 SE2d 290) (2001).
[13] See id. at 328-329.
[14] See id. at 329.
[15] See id.; see also *Williams v. State*, 248 Ga. App. 316, 322 (7) (a) (546 SE2d 74) (2001) ("Because opening and closing argument is a valuable right, the trial court was authorized to conclude that the preservation of that tactical advantage was a reasonable strategy for [the] defense attorney to pursue.").

the hearing, leaving us only with McGee's bare allegations regarding their trial testimony.

We cannot assess the prejudicial effect of trial counsel's failure to call a witness unless the defendant specifically demonstrates how counsel's failure affected the outcome of his case.[16] And "[w]ithout the testimony of the particular witness, it is impossible for [McGee] to show there is a reasonable probability the results of the proceedings would have been different."[17] Accordingly, the trial court properly rejected this ineffective assistance claim.

(b) McGee also argues that trial counsel should have stricken from the jury an individual who was represented in an unrelated matter by one of his co-defendant's attorneys. According to McGee, the juror's "allegiance" to his co-defendant's attorney prejudiced him.

We have not found, and McGee has not pointed us to, any evidence in the trial record that such a relationship existed between a juror and his co-defendant's counsel. At the new trial hearing, trial counsel could not recall any such relationship. Furthermore, McGee has presented no evidence that the outcome of his trial would have been different had trial counsel stricken this juror. As McGee admitted at the new trial hearing, he has never spoken to the juror to determine whether the alleged relationship affected the jury's deliberations. Thus, the trial court did not err in refusing to find counsel ineffective on this ground.

(c) McGee asserts that the State was vindictive and engaged in prosecutorial misconduct during the trial. This argument does not address his own counsel's performance. Accordingly, it does not support his ineffective assistance claim.

(d) Next, McGee contends that trial counsel failed to cross-examine Gooden and Ellen McGee adequately. According to McGee, Gooden made a pre-trial statement — presumably to police — indicating that McGee was involved in the drug trade during the 1980s. At the new trial hearing, McGee claimed that this statement was an "outright lie[ ]" because he was incarcerated from 1977 to 1986. In his view, counsel should have impeached Gooden with the statement to expose her as a "liar."

As an initial matter, McGee has not pointed us to any portion of the record containing this statement, which apparently was not

---

[16] See *Swint v. State*, 250 Ga. App. 573-574 (552 SE2d 504) (2001).

[17] Id. at 574; see also *Baker v. State*, 251 Ga. App. 377, 380 (2) (554 SE2d 324) (2001) ("Where the missing witness does not testify at the motion for new trial hearing, no evidence supports the claim that the witness was crucial to the defense or that the witness could have been located."); *Webb v. State*, 249 Ga. App. 214, 217 (2) (547 SE2d 767) (2001) (because defendant failed to call allegedly exculpatory witnesses at new trial hearing, he " 'provided no evidence, other than bare allegations, that the testimony of these witnesses would have changed the outcome of the proceedings' ").

introduced at trial. Furthermore, even if the statement exists, we cannot find counsel deficient in not using it to impeach Gooden. The statement would have introduced evidence of McGee's long-term involvement with drugs, lending no help to his defense. Furthermore, the impeachment strategy McGee suggests would have informed jurors about his prior incarceration, another subject trial counsel reasonably avoided.

McGee also argues that counsel should have established, through cross-examination, that Ellen McGee was incarcerated at various times in 1996 and 1997 and thus lacked knowledge about the ninth and tenth predicate acts. Ellen testified at trial that she was not present during the April 16, 1996 search and was incarcerated on May 16, 1997. The record further shows that she gave no specific testimony relating to the events at Katie Mae's home on these dates. The jury, therefore, knew that Ellen lacked knowledge about the incidents involved in the ninth and tenth predicate acts. Accordingly, McGee has not shown that trial counsel performed deficiently in cross-examining Ellen or that the cross-examination prejudiced his defense.

(e) McGee also contends that counsel erred in not requesting that the trial court instruct jurors to disregard Ellen's testimony, given her lack of knowledge regarding the ninth and tenth predicate acts. McGee has cited no legal basis for such a jury charge. Furthermore, Ellen readily admitted that she knew nothing about the April 16, 1996 and May 16, 1997 incidents, and she did not try to testify about them. Trial counsel's failure to request such a charge was neither deficient nor prejudicial.

(f) McGee claims that trial counsel did not sufficiently prepare for trial. Although he asserts that trial counsel met with him only twice, failed to interview witnesses, and "just didn't do anything," counsel testified at the new trial hearing that he had six or more pre-trial meetings with McGee, filed various motions on his behalf, developed a defense theory, and spoke with potential witnesses before trial. Counsel determined, however, that these witnesses would not be helpful to McGee's defense.

Charged with resolving the conflict in the testimony, the trial court was authorized to believe trial counsel and reject McGee's claim that counsel essentially did nothing to prepare for trial.[18] And, in light of counsel's testimony about his pre-trial activities, the trial court did not clearly err in finding that he adequately prepared McGee's defense.[19]

---

[18] See *Randolph v. State*, 225 Ga. App. 324 (484 SE2d 1) (1997).

[19] See *Huntley v. State*, 271 Ga. 227, 231 (7) (518 SE2d 890) (1999); *Randolph*, supra at 324-325.

Furthermore, McGee has not shown that, had counsel prepared differently, the jury would have reached another result. McGee complains, for example, that trial counsel did not interview various witnesses who would have testified that he was a drug user. He makes no effort, however, to show how such testimony would have benefitted him or altered the jury's verdict, especially given that several trial witnesses testified that he used cocaine. Thus, McGee has not shown prejudice.[20]

(g) According to McGee, trial counsel erroneously informed him that, if he testified, the defense would lose its right to open and conclude closing arguments.[21] McGee asserts that he based his decision not to testify on counsel's statement.

Even if counsel gave McGee erroneous information, however, McGee has not shown that this misinformation — or his resulting decision not to testify — prejudiced him. At the new trial hearing, he did not discuss what his trial testimony would have been or how that testimony would have impacted the significant evidence implicating him in the family drug business. He merely stated that he needed to testify because the charges against him were "kind of heavy." He thus has not shown any reasonable probability that the outcome of his trial would have been different had he testified.

(h) McGee complains that trial counsel failed to file a notice of appeal or a sentence review application on his behalf. The record shows, however, that McGee submitted his own sentence review request and obtained permission to file this out-of-time appeal. Because McGee has not shown how trial counsel's failure to pursue these post-conviction remedies prejudiced him, he has not met his evidentiary burden for establishing ineffective assistance of counsel.

3. Finally, McGee argues that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7. At the sentencing, the State introduced evidence that McGee had previously been convicted of felonies in federal and state court. The trial judge subsequently sentenced McGee to the maximum penalty of twenty years, although he ordered that McGee serve five of those years on probation. McGee now argues that the trial court should not have admitted — or considered — evidence relating to the federal conviction because the State failed to introduce the federal indictment or plea. The record shows, however, that McGee did not object to the use of this convic-

---

[20] See *Thurman v. State*, 207 Ga. App. 96, 98 (2) (427 SE2d 69) (1993) (physical precedent only).

[21] Under Georgia law, a defendant does not waive his right to open and conclude closing arguments simply by testifying in his own behalf. See OCGA § 24-9-20 (c).

tion at the sentencing hearing. As a result, he waived this alleged error.[22]

Furthermore, the State properly introduced evidence of the prior state felony conviction, which, McGee admits, obligated the trial court to impose the maximum 20-year sentence under the RICO Act.[23] McGee now speculates that the trial court *might* have probated a greater portion of his sentence if the federal conviction had been excluded. Yet, he has pointed to no evidence that the federal conviction impacted his sentence or that this alleged evidentiary error actually harmed him.[24] Accordingly, this argument presents no basis for reversal.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 11, 2002 — ▊▊▊▊▊▊▊
▊▊▊▊▊▊▊▊▊▊▊▊▊▊

*L. Elizabeth Lane*, for appellant.
*Howard Z. Simms, District Attorney, Sharell F. Lewis, Assistant District Attorney*, for appellee.

---

[22] See *Harden v. State*, 239 Ga. App. 700, 701 (2) (521 SE2d 829) (1999); *Godfrey v. State*, 227 Ga. App. 576, 577 (2) (489 SE2d 364) (1997).

[23] See OCGA §§ 17-10-7 (a); 16-14-5 (a).

[24] See *Jenkins v. State*, 235 Ga. App. 547, 550 (3) (c) (510 SE2d 87) (1998); *Godfrey*, supra; *Scott v. State*, 216 Ga. App. 692, 695 (4) (455 SE2d 609) (1995) (physical precedent only); cf. *Manker v. State*, 223 Ga. App. 3, 6 (5) (476 SE2d 785) (1996) (sentence reversed where transcript specifically showed that trial judge relied on inadmissible evidence in sentencing defendant as a recidivist under OCGA § 17-10-7), questioned on other grounds, *Gillman v. State*, 239 Ga. App. 880, 882 (2) (a) (522 SE2d 284) (1999).